### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :

       v.               :         **26-MJ-80-MJS**

COLE TOMAS ALLEN        :

### MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

Cole Tomas Allen, through undersigned counsel, respectfully requests this Honorable Court release him on conditions short of confinement pending trial in this case. Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 ("BRA") provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B).

### APPLICABLE LAW

As the Supreme Court held in *United States v. Salerno*, "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will *"reasonably assure"* the defendant's appearance in court and the safety of the community. § 3142(c)(1)

1

(emphasis added).   Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community.  *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.).

## ARGUMENT

## I.     The Presumption Of Detention In This Case Is Rebutted

Case law   recognizes two checks that the BRA and the Constitution impose on the presumption of detention: (1) there is an easy-to-meet standard for rebutting the presumption and the prosecution bears the burden of persuasion, and (2) the presumption alone does not warrant detention and must always be weighed along with other factors in § 3142(g). In addition, it is impermissible to detain a defendant in a presumption case based solely on evidence of past dangerousness, the nature of the crime charged, or the weight of the evidence.

### A.     Mr. Allen Can Proffer Evidence Rebutting The Presumption Of Detention

Congress enacted the statutory presumption of detention in the BRA to detain "a small but identifiable group of particularly dangerous defendants."  S. REP. NO.

98-225, at 6. Indeed, Congress intended the presumptions to operate primarily on "major drug traffickers." S. REP. NO. 98-225, at 20 (emphasis added). Congress emphasized that detention should be presumed only for these major drug traffickers, essentially drug kingpins. S. REP. NO. 98-225, at 7 (emphasizing that it was only for this "limited group of offenders that the courts [needed the] . . . power to deny release pending trial"). *See also* Siegler, *supra*, at 73 ("Congress considered at length arrestees' pretrial liberty interests, and concluded that the constitutional concerns with pretrial detention required a narrowly tailored statute to secure community safety and appearance in court.").

Judge Moss summarized the rebuttable presumption standard in *United States v. Galarza*, 2019 WL 2028710 at *4 (D.D.C. 2019):

> Once a rebuttable presumption is triggered, the defendant bears the burden of production "to offer some credible evidence contrary to the statutory presumption," *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985), while the ultimate burden of persuasion remains with the government, *see United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008); *see also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) ("In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion— to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight.") (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (noting that the burden remains with the government to persuade the court that the defendant is a danger or poses a risk of non-appearance).
>
> The defendant is not required to rebut the presumption that the criminal activity is dangerous, or even to rebut the judicial finding as to probable cause, but only to "meet[ ] a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707.

3

This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707; *see also United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021) (explaining that the defense bears "a light burden of production" to rebut the presumption, "but the burden of persuasion always rests with the government"). Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." *Dominguez*, 783 F.2d at 707 (emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707.

Notably, a defendant's ties to the community—standing alone—definitively rebut the presumption: "Where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, as did [this defendant], the presumption contained in § 3142(e) has been rebutted." *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988). As long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of flight risk and dangerousness is definitively rebutted. *Dominguez*, 783 F.2d at 707 ("Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions. . . . Once this burden of production is met, the presumption is 'rebutted.'" (quoting *Jessup*, 757 F.2d at 384)); *see also O'Brien*, 895 F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of

4

defendant's home).

Mr. Allen can easily rebut the presumption in favor of detention in this case. Mr. Allen has no criminal history—not even prior arrests, which alone would rebut the presumption of detention.  But Mr. Allen's case is much stronger.  He graduated from the prestigious California Institute of Technology with a degree in Mechanical Engineering in 2017 and later received his Master of Science in Computer Science from California State University Dominguez Hills.  He was gainfully employed as a tutor in his home state of California and has support from family and friends who will ensure that he will not be in violation of any conditions of release that the Court orders.  He also dutifully attends his Christian church and is an active participant in his religious community.  In the end, the government must still prove that detention is necessary by the weighty "clear and convincing evidence" standard. Because the government has not proven so under this weighty standard, Mr. Allen should be released.

## II.    The Bail Reform Act Factors Require Release

Under the Bail Reform Act, the Court must consider the specifically enumerated factors when determining whether the government has set forth clear and convincing evidence that Mr. Allen be detained.  They are:  1) the nature and circumstances of the offense charged; 2) the weight of the evidence; 3) the history and characteristics of the person charged; and 4) the nature and seriousness of the danger posed by the person to any person in the community if he is released.  18 U.S.C. § 3142(g).  Weighing all of these factors, this Court should release Mr. Allen.

### 1. Nature And Circumstances Of The Offense Charged

The nature and circumstances of the offense charged weigh in favor of release. The government's allegations are undoubtedly serious, it is beyond dispute that no individuals were harmed in this incident.

The government's rhetoric about a "mass shooting" is also unsupported by its own proffered facts. Mr. Allen was not alleged to be holding an automatic or even semi-automatic weapon that are the hallmarks of the modern day mass shooting. The alleged possession of a pump action of a firearm has the opposite feature of an automatic weapon that is designed to expel multiple projectiles upon a single pull of the trigger. Indeed, the government's factual recitation—unlike in many of the firearm cases that come before the Court—does not allege facts that are typically seen in these cases, such as: 1) from where the firearm was recovered; 2) whether the firearm was "ready to fire" with a chambered round; or 3) evidence that the recovered firearm contained an extended magazine.

Importantly and directly contrary to the government's assertions, the letter allegedly sent by Mr. Allen (currently the only evidence to support the government's theory of his intent) announced that he wished to "minimize casualties" by using "buckshot" which would be less likely to penetrate walls than "slugs." Exh. A. The government's memorandum omits whether the recovered shotgun shells contained slugs (single large projectiles) or buckshot (multiple pellets). Moreover, the government after essentially asserting that Mr. Allen shot a Secret Service Officer in

6

the criminal complaint, has apparently retreated from the theory by not mentioning the alleged officer at all in its memorandum.

In sum, the government's entire argument about the nature and circumstances of the offense is based upon inferences drawn about Mr. Allen's intent that raise more questions than answers. The government focuses on the presence of four daggers and two knives at Mr. Allen's arrest but offers no potential purpose for those weapons. And according to the government's memorandum, Mr. Allen chose to leave nearly half of the shotgun ammunition in the hotel room (twenty rounds), as well as a third magazine – alleged facts that make little sense under the government's theory that he intended to commit a mass shooting. The Court should find that this factor is neutral, as it relates to preventative detention.

### 2. The Weight Of The Evidence

The weight of the evidence in this case favors release. Though the defense concedes that the weight of the government's evidence is strong for the firearms offenses, the evidence for those offenses triggering the rebuttable presumption are weak and unsupported by direct evidence.

The government has charged Mr. Allen with attempting to assassinate President Trump. But its sole proffered evidence of Mr. Allen's intent – the Apology and Explanation letter – is far from clear. Indeed, the letter makes no mention of the president by name.

In addition, the government has not asserted that Mr. Allen ever fired any of the recovered weapons. Its detention memorandum does not once mention V.G.,

leaving a considerable hole in the government's evidence of intent to assassinate. Acting Attorney General Todd Blanche has made statements that indicate that initial analysis of the ballistics evidence does not support the government's theory of the case as described in its charging documents. He even described "evidence collection," a normally straight-forward process, as "very complicated." Moreover, video of the incident seen online seems to show no muzzle flash from the shotgun.

The government's evidence of the charged offense – the attempted assassination of the president – is thus built entirely upon speculation, even under the most generous reading of its theory. While the government may be able to say that the letter expresses an intent to target administration officials, it falls well short of narrowing those officials to President Trump. This factor thus weighs in favor of release.

### 3. The History And Characteristics Of Mr. Allen

As previously stated, Mr. Allen's history and characteristics counsel in favor of release in this case. The Court can impose conditions of release that will ensure both the safety of the community and his appearance at future hearings. Moreover, Mr. Allen has absolutely no criminal history or arrests in his past. Courts often rely on a defendant's criminal history and contacts with law enforcement to support the conclusion that there are no conditions short of confinement to permit release. Likewise, the Court here should consider Mr. Allen's lack of criminal history as a positive factor supporting the conclusion that Mr. Allen will abide the Court's conditions.

As an individual who enjoys the presumption of innocence, Mr. Allen remains a U.S. citizen with a master's degree, no prior convictions, and no prior allegations of violent conduct. He is a devout Christian who has spent countless hours with church groups for as long as family and friends can remember. He is a loved and respected teacher and colleague who has always demonstrated kindness, empathy and compassion and never violence.

### 4. Nature And Seriousness Of The Danger Posed To The Community

The Court can impose conditions of release that will ensure both the safety of the community and Mr. Allen's appearance at future hearings. He will certainly abide by any conditions set by this Court.

The BRA requires release when there are conditions short of confinement that will guarantee Mr. Allen's presence in court in the future and the safety of the community. Such conditions exist in this case. In this case, strict conditions of release such as home incarceration and full-time monitoring by third party custodians would satisfy the concerns of the BRA. Counsel, however, have been handicapped by their inability to meet with Mr. Cole in a way that is consistent with the Sixth Amendment. *See* ECF 12. As such, to the extent the Court's decision with respect to detention relies on conditions identified in a proposed release plan, undersigned counsel request the opportunity to supplement their briefing on the issue.

### III.    Statistics Showing That It Is Extremely Rare For Defendants On Bond To Flee Or Recidivate Demonstrate That Mr. Allen Does Not Pose A Serious Risk Of Flight Or Danger To The Community.

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[1] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[2]  Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[3]  The below chart reflects this data:

---

[1] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[2] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* AO Table H-14A.

[3] *See* AO Table H-15; AO Table H-14A.



## CONCLUSION

The government has not met its burden of demonstrating that there no conditions or combination of conditions that will assure the safety of the community. Mr. Allen respectfully requests that the Court fashion conditions of release and place him back into the community

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
TEZIRA ABE
EUGENE OHM
Assistant Federal Public Defenders
625 Indiana Ave. N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

11