**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA          :

      **v.**          :          **26-MJ-80-MJS**

COLE TOMAS ALLEN          :

**MOTION TO REMOVE SUICIDE PRECAUTIONS**

Cole Tomas Allen, through undersigned counsel, respectfully requests this Honorable Court order the Department of Corrections (DOC) at the D.C. Jail to remove Mr. Allen from suicide precautions.  Mr. Allen's placement on suicide watch and suicide precautions amount to violations of his rights under the Due Process Clause to the U.S. Constitution.  For that reason, Mr. Allen requests the Court order the DOC to remove him from suicide precautions.

**BACKGROUND**

Mr. Allen was arrested on April 25, 2026 and charged by criminal complaint. On April 27, 2026, Mr. Allen appeared before a magistrate judge of this court for his initial appearance.  Later that day, he was booked at the D.C. Jail.

During his intake on April 27, 2026, a member of the DOC intake team who assessed Mr. Allen did not note any suicide risk factors.  Despite this, "suicide precautions" were recommended, and Mr. Allen was assigned to a "safe cell."[1]

---

[1] A safe cell at D.C. Jail is a padded room with constant lighting and 24-hour lockdown procedures, including the requirements that the inmate in the room wear a vest akin to a strait jacket, be strip searched upon entry and exit, and not leave the cell except for legal or medical visits.  The cell also disallows access to resources like a jail tablet or telephone.

1

Mr. Allen was advised that he would be housed in a safe cell because he had never been arrested or spent time in jail.

On April 28, 2026, Mr. Allen was reassessed, and again no suicide risk factors or indications were observed. The nurse who assessed Mr. Allen, however, recommended he be placed in a safe cell—this time on "suicide watch," a designation more stringent than suicide precautions—and specifically stated dimmed lights, personal items, tablets, phone calls and visits (apart from legal calls or visits) were not permitted. In addition, but for legal visits and showers (which must be taken with an escort), Mr. Allen was prohibited from spending any time out of the cell.

On April 28, 2026, undersigned counsel visited Mr. Allen at the D.C. Jail and were informed that he would be placed in a regular cell by Thursday or Friday of that week. On April 29, 2026, Mr. Allen was reassessed and once again no suicide factors or indications were observed. Nevertheless, it was recommended that Mr. Allen be placed on suicide precautions. Though relatively less stringent than suicide watch, Mr. Allen was still not permitted to make phone calls to—or receive visits from—anyone outside of his legal team, have access to a jail tablet, or except for legal visits or showers—which still must be done with an escort—spend time outside of his cell.

Undersigned counsel visited Mr. Allen again on May 1, 2026. That morning, Mr. Allen was reassessed and the nurse recommended he no longer be on suicide watch or suicide precautions. At the time of his legal visit, however, Mr. Allen was still on suicide precautions. After the visit, undersigned counsel attempted to confirm with counsel for the DOC that Mr. Allen would be moved from suicide precautions,

which would permit him to access a jail tablet, commissary, and other resources. Undersigned counsel have yet to receive a response and believe Mr. Allen to still be on suicide precautions.

## ARGUMENT

"A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). The government may therefore detain the defendant and "subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536–37.

If "particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense," the Court "must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)). As such, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or

purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon the detainees *qua* detainees." *Id.* at 539.

"It is well known that [solitary confinement] causes deterioration of the mental and physical condition of inmates." *Peoples v. Annucci,* 180 F.Supp.3d 294, 298 (S.D.N.Y. 2016) (stating that such confinement is "a drastic and punitive designation, one that should be used only as a last resort and for the shortest possible time to serve the penal purposes for which it is designed"). Placement in a safe cell or on suicide precautions is for all intents and purposes solitary confinement. Incarcerated persons who are placed in these conditions are not permitted to interact with others inside the facility, receive visits, make phone calls, or access commissary or resources such as the law library or jail tablets.

Counsel have not seen, and therefore do not argue, that there is expressed intent to punish Mr. Allen. Nevertheless, his placement on suicide precautions amounts to punishment where, as here, he has exhibited no indications of suicidality. Moreover, that Mr. Allen has not been previously incarcerated is not a reason to place him under extremely restrictive and demeaning protocol. Such restrictions deprive Mr. Allen from accessing resources like a jail tablet, which would permit him to communicate with loved ones outside of the jail. Similarly, because Mr. Allen is not permitted to retain personal items while in the cell, it is counsel's understanding that he cannot review documents that counsel leave with him, thus hindering his ability to assist in his own defense.

4

Finally, Mr. Allen is forced to be escorted to the shower, strip searched when entering and exiting his cell, and wear a padded vest while inside.  These conditions are excessive restrictions on his liberty that serve no justifiable purpose and deprive Mr. Allen of dignity while incarcerated.

## CONCLUSION

Continued housing under suicide precautions is unnecessary and violates Mr. Allen's due process rights by depriving him of dignity and access to resources inside the jail.  For these reasons, and any other such reasons as the Court may determine on a hearing on the motion, Mr. Allen requests the Court order the DOC to remove any and all suicide precautions.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
TEZIRA ABE
EUGENE OHM
Assistant Federal Public Defenders
625 Indiana Ave. N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

5